IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEVON CRAWFORD,

                Plaintiff,

       v.                              CIVIL NO. WDQ-11-2152

WARDEN JOHN S. WOLFE, *et al.*,

                Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Devon Crawford, an inmate at Jessup Correctional Institution ("JCI"), sued Warden John

S. Wolfe, case manager Olusola Ayoodugbesan, and corrections officers Ayokunle Ayodele,

Lionel Burnett, and John Fields (collectively, the "Defendants"),[1] alleging violations of his rights

under 42 U.S.C. § 1983. For the following reasons, the Court will grant the Defendants' motion

for summary judgment, ECF No. 21.[2]

## Background[3]

In February 2011, Crawford was transferred from the Baltimore City Detention Center

("BCDC") to JCI because he had destroyed property at BCDC. ECF No. 21, Ex. 1 at ¶ 1. Crawford

was charged the cost of the destroyed property ($100). *Id.* Because Crawford's account had

---

[1] The Clerk shall amend the docket to reflect the proper spelling of the Defendants' names.

[2] A hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2011). Pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), Crawford was notified on February 9, 2012, that the Defendants had filed a dispositive motion, the granting of which could result in dismissal of his action. ECF No. 22. Crawford was informed that he was entitled to file an opposition within 17 days and that failure to file a timely or responsive pleading, or to show a genuine dispute of material fact, could result in dismissal of his case or summary judgment against him without further notice. *Id.* Crawford has not filed a response.

[3] Had Crawford submitted evidence in response to the Defendants' motion for summary judgment, his evidence would have "be[en] believed, and all justifiable inferences [would have] be[en] drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

insufficient funds, Crawford's access to the commissary was restricted to the purchase of necessary hygiene items. ECF No. 21, Ex. 1 at ¶ 1.

On April 4, 2011, Crawford filed a request for administrative remedy (an "ARP"), alleging that Ayodele had called him a "bitch" and threatened him when Crawford had asked about his recreation time.[4]

On April 6, 2011, at about 5:25 p.m., Ayodele told Crawford that he could go to the bottom dayroom. ECF No. 21, Ex. 2 at ¶ 3. When his cell door was opened, Crawford said that he was going to the top dayroom instead. *Id.* Ayodele ordered Crawford to go to the assigned dayroom or return to his cell. *Id.* Crawford refused and repeatedly snatched his arm away as Ayodele tried to grab him. *Id.* Burnett arrived and Crawford obeyed his order to return to his cell.[5] Later that day, Crawford filed a second ARP, complaining that Ayodele had assaulted him. *See* ECF No. 21, Ex. 4.

On April 12, 2011, Crawford's first ARP was dismissed. *Id.* An investigation revealed that Crawford had been given access to one of the two recreation rooms every day, and there was no evidence to support his claim that Ayodele had used threatening language against him on April 4, 2011. ECF No. 21, Ex. 3. Crawford did not appeal. *Id.*

On May 10, 2011, Crawford's second ARP--about the April 6, 2011 incident--was dismissed for lack of evidence.[6] Crawford did not appeal. ECF No. 21, Ex. 4.

On August 3, 2011, Crawford sued, alleging that he was wrongly removed from pre-trial detention at BCDC and placed in JCI, where he has been denied access to the telephone and

---

[4] *See* ECF No. 21, Ex. 3. Inmates are rotated between two recreation rooms--the top dayroom and the bottom dayroom--on alternate days, in order to provide all inmates access to the telephone in the top dayroom. *See id.* at 5.

[5] ECF No. 21, Ex. 2 at ¶ 3. Although a video recorded the incident, *see id.*, Ex. 6, the Court has not reviewed it; there is no evidence that the video has been made available to Crawford.

[6] ECF No. 21, Ex. 4. Ayodele told the investigator that he had not assaulted Crawford, but had merely "stopped

commissary. ECF No. 1 at 5. Crawford further alleged that, on April 4, 2011, Defendant Ayodele threatened him and called him a "bitch," and on April 6, 2011, assaulted him in retaliation for filing an ARP. *Id.* On February 8, 2012, the Defendants moved for summary judgment. ECF No. 21.

## Standard of Review

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."[7]

---

[him] from trying to bully his way into the dayroom." *Id.* at 4.

[7] *Bouchat,* 346 F.3d at 526 (internal quotation marks omitted), *quoting Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993), *and citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986).

Discussion

The Defendants argue, *inter alia*, that Crawford's claims must fail because he did not exhaust

his administrative remedies.  Mem. in Supp. of Mot. for Summ. J. 8-10.

The Prison Litigation Reform Act (the "PLRA") generally requires a prisoner plaintiff to

exhaust administrative remedies before filing suit in federal court.[8] The statute applies to "all inmate

suits about prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong."[9] Thus, Crawford's complaint must be

dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under

the PLRA, or that the Defendants have forfeited the non-exhaustion defense.  *See Chase*, 286

F.Supp.2d at 528.

The Maryland Division of Correction's Directive on Administrative Remedy Procedures,

DCD No. 185-002 (August 27, 2008), outlines the administrative grievance process for prisoners.

An ARP must be filed with the warden within 30 days of the alleged abuse, or 30 days after the date

the inmate first learned of the abuse or injury giving rise to the complaint, whichever is later.  *See*

DCD No. 185-002, § VI. L.3.  If the request is denied, a prisoner has 30 days to appeal to the

Commissioner of Correction.  *See id.*, § VI. M.1.  If the appeal is denied, the prisoner has 30 days to

file a grievance with the Executive Director of the Inmate Grievance Office.  *See* Md. Code Ann.

---

[8] *See* 42 U.S.C. § 1997e(a) (" [n]o action shall be brought with respect to prison conditions under § 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted").

[9] *Porter v. Nussle*, 534 U.S. 516, 532 (2002). *See also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of a prisoner's claim for failure to exhaust when he "never sought intermediate or full administrative review after prison authority denied relief"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, when the plaintiff had not appealed his administrative claim through all

4

Corr. Servs., §§ 10-206, 10-210; Md. Code Regs. § 12.07.01.03.; *see also* DCD No. 185-002, § VI.N.1.

The record shows that Crawford filed ARPs only about some of the abuses he alleges now: Ayodele's alleged verbal threats and name-calling on April 4, 2011, and the alleged assault on April 6, 2011. *See* ECF No. 21, Ex. 3 & 4. He did not appeal the dismissal of these ARPs, and he has not filed ARPs about his allegedly improper removal from BCDC, or his alleged inability to access the telephone and commissary. Because Crawford did not exhaust his administrative remedies, the Defendants are entitled to judgment as a matter of law.[10]

III. Conclusion

For the reasons stated above, the Defendants' motion for summary judgment will be granted.

Date: 7/26/12

William D. Quarles, Jr.
United States District Judge

---

four stages of the bureau's grievance process).

[10] *See Porter*, 534 U.S. at 532; *see also Graham v. Gentry*, 413 F. App'x 660, 664 (4th Cir. 2011) (affirming summary judgment against a prisoner who failed to exhaust his administrative remedies before filing his lawsuit). Because Crawford failed to exhaust his administrative remedies, the Court need not consider the Defendants' other arguments for summary judgment.